IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LEAGUE OF WILDERNESS DEFENDERS-<br>BLUE MOUNTAINS BIODIVERSITY PROJECT,<br>　　　　　　Plaintiff, | CV. 04-1595-PK (Lead Case)<br>CV. 04-1628-PK<br>CONSOLIDATED CASES<br><br>OPINION AND ORDER |
| v. | |
| BROOKS SMITH, et al.,<br>　　　　　　Defendants. | |

PAPAK, Magistrate Judge:

　　　Before this court are plaintiffs' renewed motions for summary judgment and defendants' motion to dismiss. Plaintiffs challenge the High Roberts Fire Salvage Project in the Malheur National Forest. Plaintiffs allege the U.S. Forest Service violated the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332, the National Forest Management Act (NFMA), 16 U.S.C. § 1600 et seq., and the Forest Service Decisionmaking and Appeals Reform Act (ARA), 16 U.S.C. § 1612 Note. This court has jurisdiction under 28 U.S.C. § 1331.

Page 1 - OPINION AND ORDER

On December 9, 2004, plaintiffs' motion for preliminary injunction was granted. Plaintiffs filed motions for summary judgment defendants filed cross-motions in November 2005. Oral argument was held and on March 23, 2006, this court ordered a remand of this case to the Forest Service to proceed with an administrative appeal of the High Roberts project, and ordered that the preliminary injunction to prevent any logging remain in place. Plaintiffs' motions for summary judgment and defendants' cross-motions for summary judgment were denied as moot.

After considering plaintiffs' administrative appeal, the Forest Service affirmed the High Roberts project decision on July 6, 2006. On August 24, 2006, defendants withdrew the decision notice approving the High Roberts project. For the reasons set forth below, this court finds that this case is moot. Defendants' motion to dismiss is granted, and plaintiffs' motions for summary judgment are denied as moot.

## LEGAL STANDARD

The "exercise of judicial power under [Article] III of the Constitution depends on the existence of a case or controversy." Preiser v. Newkirk, 422 U.S. 395, 401 (1975). A case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Northwest Envtl. Def. Ctr. v. Gordon, 849 F.2d 1241, 1244 (9th Cir. 1988) (citing Murphy v. Hunt, 455 U.S. 478, 481 (1982) (per curiam)). A "live" controversy exists "as long as effective relief may still be available to counteract the effects of the violation." Id. at 1245. Therefore, even if the alleged illegal activity has been completed, the case is not moot if the court can provide effective relief for the violation. Neighbors of Cuddy Mountain v. Alexander, 303 F.3d 1059, 1065 (9th Cir. 2002); see also Cantrell v. City of Long Beach, 241

F.3d 674, 678 (9th Cir. 2001); Headwaters v. BLM, 893 F.2d 1012, 1015 (9th Cir. 1989). However, federal courts lack jurisdiction "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." Church of Scientology of California v. United States, 506 U.S. 9, 12 (1992) (citation omitted)7.

## FACTUAL BACKGROUND

The High Roberts fire burned 13,535 acres in July and August of 2002, on the Malheur National Forest. On September 30, 2004, the Forest Service issued a Decision Memo for the High Roberts salvage timber sale, authorizing the logging of 2.7 million board feet of timber. The project area was 209 acres with .06 miles of temporary road construction. According to the Forest Service, the purpose of this project is to recover the economic value of dead and dying trees. The Forest Service determined that this project fit within a categorical exclusion (CE) for small-scale salvage harvest. Scientific specialist reports were prepared before the decision was issued, but because of the CE designation, no environmental assessment (EA) or environmental impact statement (EIS) was prepared pursuant to NEPA. A project is eligible for CE designation when the Forest Service determines there will be no significant environmental effects as a result of the project. Specifically, this project falls within category 13 of the Forest Service CE procedures which includes the salvage of dead or dying trees not to exceed 250 acres, requiring no more than 1/2 mile of temporary road construction. 68 Fed. Reg. 44607 (July 29, 2003). The inquiry conducted by the Forest Service included a determination that no potential extraordinary circumstances would preclude this project from being categorically excluded. When marking the trees for harvest, the Forest Service used the Scott Mortality Guidelines, a tree mortality rating

Page 3 - OPINION AND ORDER

system developed by the Forest Service to determine the probability that fire-injured trees will survive.

Plaintiffs filed separate complaints in November 2004 and moved for a temporary restraining order (TRO) and preliminary injunction (PI) to stop the auction and award of the sale as well as any logging on the project. Subsequently, their individual cases were consolidated. Plaintiff Blue Mountains Biodiversity Project (BMBP) alleged the following: (1) the Forest Service improperly used a categorical exemption for the High Roberts project violating NEPA; (2) the use of the Scott Mortality Guidelines violates NEPA's scientific integrity requirement and NFMA because no live tree 21 inches diameter breast height (dbh) or larger may be cut under Eastside Screens; and (3) the Forest Service violated NEPA by failing to prepare an EA or EIS for promulgation of the CE under which this project falls.[1] Plaintiff Forest Service Employees for Environmental Ethics (FSEEE) alleged the following: (1) the Forest Service violated NFMA because no live tree 21 inches dbh or larger may be cut under Eastside Screens; (2) use of a CE violated NEPA; and (3) the Forest Service violated the ARA by failing to provide notice, comment and appeals to the High Roberts project. The Forest Service previously had denied FSEEE's request for an administrative appeal of this project.

On December 9, 2004, plaintiffs' motion for TRO/PI was granted and a written PI Order was signed on January 6, 2005. This court enjoined the Forest Service from awarding any timber sale or harvesting any live trees greater than 21 inches dbh. The court granted the Forest Service leave to re-mark the project to exclude trees identified as "live" pursuant to the PI Order,

---

[1] BMBP withdrew this claim, their Fifth Claim for Relief, during oral argument.

Page 4 - OPINION AND ORDER

and if the project was re-marked, plaintiffs would have the opportunity to conduct a field review of the re-marking. The project was re-marked in part, plaintiffs reviewed the re-marking and disputed that the Forest Service performed the re-marking correctly. Motions for summary judgment and cross-motions for summary judgment were filed in November 2005. In March 2006, this court remanded this case back to the Forest Service to conduct an administrative appeal, and ordered that the preliminary injunction remain in place until the appeal was completed.

In July 2006, the Forest Service denied FSEEE's administrative appeal, and filed a motion to dissolve the preliminary injunction. On August 11, 2006, plaintiffs' filed renewed motions for summary judgment with substantially the same claims regarding alleged violations of NFMA, NEPA, and improper use of the Scott Mortality Guidelines.[2] On August 24, 2006, the Forest Service withdrew the High Roberts project, explaining that with the lawsuit delaying the salvage sale for two years, recent review of the sale area caused concern that the project may no longer be in compliance with the Forest Plan. The same announcement mentions that the Forest Service will be developing a new proposal in the future for the High Roberts area. On August 25, 2006, the Forest Service withdrew its motion to dissolve the preliminary injunction, and on September 8, 2006, the Forest Serviced filed its motion to dismiss this case based on withdrawal of the sale. On September 20, 2006, the Forest Service filed notice that the Scott Mortality Guidelines had been amended, specifically the rating system used to estimate delayed mortality

---

[2]In light of plaintiff FSEEE's completed administrative appeal of the High Roberts Project, FSEEE's original ARA claim was not included in their renewed motion for summary judgment.

Page 5 - OPINION AND ORDER

of large, old ponderosa pines.

## ANALYSIS

The Forest Service argues that this case is moot because the High Roberts project has been withdrawn and this court can no longer order any of the relief sought by plaintiffs. Plaintiffs argue that because this court may still order effective relief, the controversy in this case remains live and the case is not moot. The relief that plaintiffs suggest includes this court: 1) issuing a declaratory judgment on plaintiffs' NFMA and NEPA claims, specifically finding that the High Roberts project would permit logging of large trees evaluated using the Scott Guidelines in violation of the Eastside Screens; 2) issuing a permanent injunction, enjoining the Forest Service from proceeding with any logging in the project area until it can demonstrate full compliance with the law. Because this court cannot order the relief plaintiffs seek or any other effective relief, this case must be dismissed as moot.[3]  See Foster v. Carson, 347 F.3d 742, 745-46 (9th Cir. 2003) (explaining that when the situation between the parties changes and the court can grant no relief, a claim is moot and must be dismissed for lack of jurisdiction).

Here, plaintiffs' complaints are based on a challenge to the Forest Service's 2004 decision authorizing the High Roberts project. Because that decision has been withdrawn, the High Roberts project cannot go forward and plaintiffs' allegations of actual or threatened injury based on the project no longer exist. With no injury to allege, this court can provide no redress to

---

[3] Citing to this court's earlier decision in FSEEE v. U.S. Forest Service, No. 05-553-PK, 2006 U.S. Dist. LEXIS 33725 (D. Or. Apr. 13, 2006), we note plaintiffs' argument that issues concerning the Eastside Screens, the Scott Guidelines and the Forest Service's reliance on a categorical exclusion will again not be addressed if this action is moot. However, these issues must be resolved on a case-by-case basis, analyzing the specific facts of each disputed project to determine whether the Forest Service has violated the applicable statutes and the APA.

Page 6 - OPINION AND ORDER

plaintiffs. Unlike League of Wilderness Defenders v. Marquis-Brong, 259 F. Supp. 2d 1115 (D. Or. 2003), to which plaintiffs cite for their argument that this court may still order effective relief, the Forest Service has taken no actions on the ground in this project and plaintiffs have suffered no injury. Without any current dispute to form the required "live controversy" in a federal action, this court lacks jurisdiction to rule on the merits of this case. Thus this case must be dismissed.[4] See High Country Res. v. Fed. Energy Res. Comm'n, 255 F.3d 741, 747-48 (9th Cir. 2001) (courts must dismiss claims without reaching the merits where jurisdiction is lacking).

Plaintiffs' argue that this action meets the two exceptions to mootness: challenges to conduct "capable of repetition yet evading review", and voluntary cessation of the allegedly unlawful conduct. Los Angeles v. Lyons, 449 U.S. 934, 935 n.1 (1980).

The first mootness exception applies where "(1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again." Biodiversity Legal Found. v. Badgley, 309 F.3d 1166, 1173 (9th Cir. 2002) (citation omitted). The first prong is of no assistance to plaintiffs as the procedural history of this case demonstrates that plaintiffs were able to obtain preliminary relief, and this case was fully briefed on the merits before mootness became an issue based on the Forest Service's withdrawal of the project. The second prong is also unavailing as plaintiffs have

---

[4] Acknowledging that this court may find the instant case moot, plaintiffs request findings to accompany this opinion. This court declines plaintiffs' invitation to enter findings. The findings plaintiffs request would not provide any added protection to the High Roberts area or prevent any actions by the Forest Service in the future. The High Roberts project as it was proposed has been withdrawn and may not be revived in its current form, the Scott Guidelines have been amended, and any future projects in the High Roberts area must comply with applicable law. No findings are necessary. Additionally, Fed. R. Civ. P. 41(a)(2) applies to voluntary dismissal by the plaintiff and thus does not apply to the instant case.

Page 7 - OPINION AND ORDER

failed to show that there is a reasonable expectation that the alleged violations of NFMA, NEPA and the ARA will be repeated.  See Alaska Ctr. for the Env't v. U.S. Forest Service, 189 F.3d 851, 856 (9th Cir. 1999) (describing plaintiffs' burden as needing to show that it is reasonable to expect that defendants will engage in conduct that will again give rise to the allegedly moot dispute).  Plaintiffs cite to the Forest Service's letter withdrawing the High Roberts project which includes reference to the development of a new proposal for the project area in the future.  See Exh. 1 to Defendants' Memo in Support of Motion to Dismiss.  While the court appreciates plaintiffs' concerns that a new project in the High Roberts area will suffer from the same alleged violations as the current project, it would be premature and unreasonable to assume that the Forest Service would repeat these alleged defects in the development of a new project.  A new project should be based on new data regarding post-fire salvage generally, and new data from the High Roberts area in particular.  See, e.g., Defendants' Notice of Amendment to Scott Guidelines, dated August 30, 2006.  A new project will also provide for notice and comment by the public, including plaintiffs, and will be subject to challenge under applicable law.  Because it would be inappropriate for this court to find, based on the record before us, that the alleged violations inherent in the withdrawn High Roberts project are capable of repetition yet evading review, the first exception to the mootness doctrine is not applicable to the instant case.

      The second exception to the mootness doctrine is for voluntary cessation of the allegedly unlawful activity.  Voluntary cessation arises where "despite the apparent demise of the controversy, its resolution has a reasonable chance of affecting the parties' future relations."  Clarke v. United States, 915 F.2d 699, 703 (D.C. Cir. 1990).  While the burden is on the defendants to demonstrate there is no reasonable expectation that the allegedly wrongful

Page 8 - OPINION AND ORDER

behavior will recur, Friends of the Earth, Inc. v. Laidlaw Envtl. Svcs., 528 U.S. 167, 189 (2000), a party asserting mootness also can meet its burden by establishing that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Norman-Bloodsaw v. Lawrence Berkeley Lab., 135 F.3d 1260, 1274 (9th Cir. 1998) (internal citations omitted).

Plaintiffs argue that the Forest Service has failed to demonstrate that the alleged violations of NEPA and NFMA could not reasonably recur. This court disagrees. Plaintiffs cite to three aspects of the Forest Service's letter withdrawing the High Roberts project for their argument: 1) the Forest Service's description of the development of a new proposal for the same project area; 2) the Forest Service's unsurprising admission that the agency is continuing to develop methods to recover economic value of timber burned in wildfires; and 3) the Forest Service's ongoing use of the Scott Guidelines to predict post-fire mortality in other projects. However, none of these are sufficient evidence for this court to find that the challenged activity in this case is likely to recur. Plaintiffs' claims in this particular case are based on the Forest Service's final action in approving post-fire salvage logging in the High Roberts fire area. Due to the preliminary injunction, no logging ever took place. It is undisputed that the High Roberts project has been withdrawn and the Forest Service does not have the authority to revive it in its current form at some later time. Also, the procedure the agency employed under NEPA to evaluate the environmental effects of the High Roberts project is also now effectively ended. To authorize a new project in the High Roberts area, the Forest Service would need to acquire new data, make new decisions including issuing new notice, provide opportunity for public comment, and finally issue a new decision that must comply with all applicable laws and which would be

subject to challenge. See, e.g., FSEEE v. U.S. Forest Service, 408 F. Supp. 2d 916, 918-19 (N.D. Cal. 2006) (describing that post-withdrawal of an agency decision, any subsequent decision to proceed with a new timber sale must pass through the administrative process again). Further, the Scott Guidelines will not be applied in the same manner to a new High Roberts project because the Scott Guidelines themselves have changed. The withdrawal of the High Roberts project has, in effect, eradicated any possible effects of the violations alleged by plaintiffs. See Norman-Bloodsaw, 135 F.3d at 1274. Because plaintiffs have failed to show that the Forest Service's conduct in authorizing the High Roberts project with alleged violations of NFMA and NEPA could be reasonably expected to recur, they have not successfully asserted that the voluntary cessation exception to the mootness doctrine applies here.

Plaintiffs rely on cases that are not relevant to our inquiry here. In Laidlaw and League of Wilderness Defenders v. Marquis-Brong, defendants had committed on-the-ground activities that were then the subject of each court's scrutiny in determining whether those activities were likely to recur. In Laidlaw, the Court evaluated the likelihood that a permittee who had habitually violated its Clean Water Act permit for discharges at a plant would do so again. 528 U.S. at 176. In League of Wilderness Defenders v. Marquis-Brong, the court's rejection of mootness was soundly based on the Bureau of Land Management's completion of much of a challenged salvage logging project prior to voluntary cessation of the agency's thinning of green trees. 259 F. Supp. 2d 1115, 1120-21. Here, the relief that plaintiffs seek is premised on the review of an administrative record and a possibility of injury that has been abnegated by the Forest Service's withdrawal of the High Roberts project. These cases cannot guide this court's

Page 10 - OPINION AND ORDER

inquiry and do not support the plaintiffs' argument that this case is not moot.[5]

CONCLUSION

For the foregoing reasons, this court finds that the Forest Service's withdrawal of the High Roberts project renders this case moot. The Forest Service's motion to dismiss (No. 151) is granted. Plaintiffs' motions for summary judgment (Nos. 141 and 144) are denied as moot. A judgment will be prepared dismissing this case with prejudice.

Dated this 12th day of December, 2006.

    /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

---

[5] The court notes plaintiff FSEEE's filing of the Ninth Circuit's recent opinion in <u>Oregon Natural Resources Council v. U.S. Bureau of Land Managment</u>, No. 05-35245 (Dec. 4, 2006). This case is equally unhelpful in that the court's mootness inquiry was based on determining "effective post-harvest relief", and followed a line of other Ninth Circuit cases that made findings intended to mitigate environmental effects of projects with on-the-ground effects.

Page 11 - OPINION AND ORDER