IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEAGUE OF WILDERNESS DEFENDERS-
BLUE MOUNTAINS BIODIVERSITY PROJECT,
                Plaintiff,

v.

BROOKS SMITH, et al.,
                Defendants.

CV. 04-1595-PK (Lead Case)
CV. 04-1628-PK
(Consolidated Case)

OPINION AND
ORDER

PAPAK, Magistrate Judge:

Plaintiff Blue Mountains Biodiversity Project ("BMBP") moves for an award of

approximately $90,000 in attorney fees and costs pursuant to the Equal Access to Justice Act

("EAJA"), 28 U.S.C. 2412(d) (#182).  Defendant U.S. Forest Service ("Forest Service") opposes

BMBP's motion and any award of fees thereon, claiming that BMBP is not a prevailing party

and that the government's conduct was substantially justified within the meaning of the statute,

thus precluding an award of fees.  In the alternative, the Forest Service argues that any award of

Page 1 - OPINION AND ORDER

fees to BMBP should be significantly reduced because of its limited success and in light of fees sought by co-Plaintiff Forest Service Employees for Environmental Ethics ("FSEEE").[1]  For the reasons set forth below, this court awards BMBP attorney fees in the amount of  $79,256.00 and $9,671.00 in costs.

FACTUAL BACKGROUND

Plaintiffs challenged the High Roberts Fire Salvage Project in the Malheur National Forest by filing complaints in November 2005.  Plaintiffs alleged the U.S. Forest Service violated the National Environmental Policy Act ("NEPA"), 42 U.S.C.  § 4332, the National Forest Management Act ("NFMA"), 16 U.S.C. § 1600 et seq., and the Forest Service Decisionmaking and Appeals Reform Act ("ARA"), 16 U.S.C. § 1612 Note.

The High Roberts fire burned 13,535 acres in July and August of 2002 on the Malheur National Forest.  On September 30, 2004, the Forest Service issued a Decision Memo for the High Roberts salvage timber sale, authorizing the logging of 2.7 million board feet of timber. The project area was 209 acres with .06 miles of temporary road construction.  According to the Forest Service, the purpose of this project was to recover the economic value of dead and dying trees.  The Forest Service determined that this project fit within a categorical exclusion ("CE") for small-scale salvage harvest such that scientific specialists reports were prepared before the decision was issued, but because of the CE designation, no environmental assessment ("EA") or environmental impact statement ("EIS") was prepared pursuant to NEPA.  A project is eligible for CE designation when the Forest Service determines there will be no significant

---

[1]FSEEE filed a separate fee petition (#175) seeking $51,924.11 in attorney fees and costs. The Forest Service subsequently stipulated with FSEEE to fees in the amount of $35,000 (#197).

environmental effects as a result of the project. Specifically, this project fell within category 13 of the Forest Service CE procedures which includes the salvage of dead or dying trees not to exceed 250 acres, requiring no more than 1/2 mile of temporary road construction. 68 Fed. Reg. 44607 (July 29, 2003). The inquiry conducted by the Forest Service included a determination that no potential extraordinary circumstances would preclude this project from being categorically excluded. When marking the trees for harvest, the Forest Service used the Scott Mortality Guidelines, a system for analyzing fire-caused tree mortality in the region in question. The Forest Service was also required to abide by the set of public lands management standards known as "Eastside Screens" which require the Forest Service, through each individual Forest Plan, to maintain all late and old seral and/or structural live trees greater than 21 inches in diameter at breast height ("dbh").

Plaintiffs filed separate complaints in November 2004 and moved for a temporary restraining order ("TRO") and preliminary injunction ("PI") to stop the auction and award of the sale as well as any logging on the project. Subsequently, their individual cases were consolidated. Plaintiff BMBP alleged the following: (1) the Forest Service improperly used a categorical exemption for the High Roberts project violating NEPA; (2) the use of the Scott Mortality Guidelines violated NEPA's scientific integrity requirement and NFMA because no live tree 21 inches dbh or larger may be cut under Eastside Screens; and (3) the Forest Service violated NEPA by failing to prepare an EA or EIS for promulgation of the CE under which this project falls.[2] Plaintiff FSEEE alleged the following: (1) the Forest Service violated NFMA because no live tree 21 inches dbh or larger may be cut under Eastside Screens; (2) use of a CE

---

[2]BMBP withdrew this claim, their Fifth Claim for Relief, during oral argument.

violated NEPA; and (3) the Forest Service violated the ARA by failing to provide notice, comment and appeals to the High Roberts project. The Forest Service previously had denied FSEEE's request for an administrative appeal of this project pursuant to the ARA.

On December 9, 2004, plaintiffs' motions for a TRO/PI was granted and written PI Orders were signed on December 9, 2004, and on January 6, 2005.[3] This court enjoined the Forest Service from awarding any timber sale or harvesting any live trees greater than 21 inches dbh. The court granted the Forest Service leave to re-mark the project to exclude trees identified as "live" pursuant to the PI Order, and if the project was re-marked, plaintiffs would have the opportunity to conduct a field review of the re-marking. In February 2005, the court granted the Forest Service's motion to stay this case for reevaluation of the High Roberts project. The project was re-marked in part. Plaintiffs reviewed the re-marking and disputed that the Forest Service performed the re-marking correctly. Motions for summary judgment and cross-motions for summary judgment were filed in November 2005. Oral argument was held on March 13, 2006. On March 23, 2006, this court ordered a remand of this case to the Forest Service to proceed with an administrative appeal of the High Roberts project,[4] and ordered that the PI remain in place. All motions for summary judgment were denied as moot.

After considering plaintiffs' administrative appeal, which alleged that the project continued to violate NFMA and NEPA, the Forest Service affirmed the High Roberts project

---

[3]Judge King signed a PI Order on December 9, 2005 (#44). This case was subsequently transferred to Judge Jones who signed a more specific PI Order that included a definition of a "live" tree and directions to the Forest Service on conferral with plaintiffs (#48).

[4]The decision to remand was based on Earth Island Institute v. Pengilly, 376 F. Supp. 2d 994 (E.D. Cal. 2005).

decision on July 6, 2006, and subsequently moved to have the PI dissolved.  Plaintiffs renewed

their motions for summary judgment.  On August 24, 2006, the Forest Service withdrew the

Decision Memo approving the project, explaining that based on a recent review of the sale area,

the Forest Service was "concerned that the Project may not longer be in compliance with the

Forest Plan."  Two weeks later the Forest Service moved to dismiss this case.  On September 20,

2006, the Forest Service filed notice with the court that it had amended the Scott Guidelines and

had determined that "delayed mortality of large, old ponderosa pines has not occurred at the rate

projected by the current Rating System" such that the Guidelines are not "refined enough at the

present time to confidently rate trees having Low or Moderate probability to survive within any

specified timeframe."  On December 12, 2006, this court found that the Forest Service's

withdrawal of the project rendered this case moot and granted the Forest Service's motion to

dismiss.  Thereafter, both plaintiffs filed petitions under EAJA for fees and costs.

ANALYSIS

The Equal Access to Justice Act ("EAJA") provides for an award of attorney fees and

expenses to the prevailing party unless the court finds that the position of the United States was

substantially justified or that special circumstances make an award unjust. 28 U.S.C. §

2412(d)(1)(A).  If attorney fees are appropriate, the court must then determine the amount of said

fees by examining the hours reasonably expended on the litigation multiplied by a reasonable

hourly rate.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The issues presented here are: (1)

whether BMBP was a prevailing party; (2) whether the government's conduct was substantially

justified within the meaning of the statute; (3) whether BMBP is entitled to compensation at an

hourly rate in excess of the statutory cap; and (4) whether BMBP's fee request is reasonable.  I

address each issue in turn.

I.      Prevailing Party

BMBP argues that it is a prevailing party under EAJA because it succeeded in securing preliminary injunctive relief to stop the auction and award of the sale of the High Roberts Fire Salvage Project and any logging on the project.  The Forest Service argues that plaintiffs FSEEE and BMBP should be segregated in determining who secured injunctive relief, and that a close reading of the various court orders in this case indicates that BMBP was not a prevailing party in plaintiffs' joint efforts to secure injunctive relief.  This court disagrees with the Forest Service's parsing of those prior orders.

A "prevailing party" is one who has been awarded some relief by the court on the merits of at least some of his claims.  Hanrahan v. Hampton, 446 U.S. 754, 758 (1980).  "A litigant need not prevail on every issue, or even on the 'central issue' in the case, to be considered the prevailing party."  Stivers v. Pierce, 71 F.3d 732, 751 (9th Cir. 1995).  As the Supreme Court has clarified, to be a prevailing party there must be a court-ordered change in the legal relationship between the parties, such as a judgment on the merits or a court-ordered decree.  Buckhannon Board and Care Home v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 604 (2001).  Under Ninth Circuit law, a preliminary injunction satisfies the requirements of Buckhannon.  Watson v. County of Riverside, 300 F.3d 1092, 1096 (9th Cir. 2002), cert. denied, 538 U.S. 923 (2003).

Both plaintiffs filed motions for preliminary injunction and both motions were granted in part.  See docket #43, Opinion Issued December 9, 2004.  The Forest Service argues for an overly technical interpretation of Judge King's ruling on plaintiffs' motions for preliminary

injunction such that only plaintiff FSEEE and not plaintiff BMBP would qualify as a prevailing party under EAJA.  However, this court finds that Judge King's opinion and the two subsequent orders by two different judges granted relief to <u>both</u> plaintiffs.  BMBP is considered a prevailing party for attorney fees purposes "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  <u>Hensley</u>, 461 U.S. at 433 (citation omitted).  Because BMBP succeeded in securing preliminary injunctive relief that prevented the Forest Service from awarding the sale and allowing trees on the project area to be cut, the legal relationship between BMBP and the Forest Service changed, and this court finds that BMBP is a prevailing party under EAJA.

II.    Substantially Justified

The federal government bears the burden of showing that its position was substantially justified.  <u>ONRC v. Marsh</u>, 52 F.3d 1485, 1492 (9th Cir. 1995).  To determine whether the Forest Service's position was substantially justified, this court conducts a two-part inquiry, examining first whether the government was substantially justified in taking its original action, and second whether the government was substantially justified in defending the validity of that action in court.  <u>See</u> <u>Kali v. Bowen</u>, 854 F.2d 329, 332 (9th Cir. 1988).  "A finding that either the government's underlying conduct which gave rise to the litigation or its litigation position was not substantially justified is sufficient to support an award of EAJA fees."  <u>Cervantez v. Sullivan</u>, 739 F. Supp. 517, 521 (E.D. Cal. 1990).

Applying this test, I find that the Forest Service's litigation position was not substantially justified and, therefore, do not reach the issue of whether the Forest Service was substantially justified in taking its original action.

Page 7 - OPINION AND ORDER

On two different occasions the Forest Service was ordered to reassess the project and on neither occasion did it comply fully or offer stronger rationales for the underlying decision to approve the High Roberts project.  First, Judge Jones ordered that the trees in the project area be remarked to exclude any trees that were still alive.  However, the Forest Service only remarked the large trees in two of the units that formed the project area.  Second, on remand for an administrative appeal, this court provided another opportunity for the Forest Service to reconsider the trees marked for harvest or respond adequately to BMBP's field surveys by experts which revealed live, old-growth trees marked for harvest.  Rather, the Forest Service issued a decision memo after the remand that was identical to the previously issued decision memo.  As late as June 27, 2006, four years post-fire, BMBP's experts provided evidence that live trees over 21 inches dbh that were marked for harvest by the Forest Service were still alive, thus calling into question the science used by the Forest Service which predicted 95% mortality by the end of the second growing season after the fire.  The use of the Scott Mortality Guidelines, questioned repeatedly by BMBP, also proved less than completely reliable and formed the basis for  notice to the court in September 2006 that those guidelines were being substantially revised to account for an inability to predict probability of mortality of some tree species on a short-term basis.  Ultimately, the Forest Service did conduct a new review of the project area in August 2006 and withdrew the sale, concluding that the project may no longer be in compliance with the Forest Plan.  Viewing these circumstances together, this court finds that the Forest Service's litigation position asserted to defend the action of offering the High Roberts

salvage sale was not substantially justified.[5]

Since BMBP is a prevailing party and the Forest Service's litigation position was not substantially justified, an award of EAJA fees to BMBP is appropriate

III.    Reasonableness of Fee Request

    A.    Hourly Rate

BMBP requests $80,711 in attorney fees. BMBP's attorneys have spent over four years on this case and request reimbursement for 368.8 total hours. Their hourly rates range from $190 to $250. While EAJA set a base rate of $125 per hour in 1996, the Ninth Circuit has approved adjustments upward to account for the cost of living. Sorenson v. Mink, 239 F.3d 1140, 1148 (9th Cir. 2001). EAJA hourly rates may also be adjusted upward to account for special factors including limited availability of attorneys with distinctive knowledge or specialized skill necessary for the litigation in question. Love v. Reilly, 924 F.2d 1492, 1496 (9th Cir. 1991). Plaintiffs must also show that the specialized skills and knowledge of their attorneys were not available elsewhere at the statutory rate. Id.

This court finds that counsel for BMBP has satisfied the EAJA requirements for an enhanced hourly rate. The Ninth Circuit has recognized environmental litigation as "an identifiable practice specialty that requires distinctive knowledge" such that enhancement of the EAJA base rate is reasonable. Love v. Reilly, 924 F.2d at 1496. Also, counsel for BMBP has demonstrated that their distinctive skills were necessary to litigate this case. National Wildlife Federation v. FERC, 870 F.2d 542, 547 (9th Cir. 1989) (enhanced fees under EAJA were

---

[5] The court also notes that the Forest Service never advanced the argument that its position was substantially justified in response to FSEEE's fee petition.

warranted for counsel who specialized in environmental law).  Counsel for BMBP has also

shown that they possessed skills that were not available at the EAJA base rate of $125 per hour.

Because BMBP has met all the criteria for enhanced rates for their attorneys, this court finds it

reasonable that Mr. Bloemers' and Mr. Winter's hourly rates are charged at $210, $225, $240,

and $250 per hour for their work in 2004, 2005, 2006, and 2007 respectively, and Mr. Litmans'

hourly rates are charged at $190, $205, $215, and $225 for his work in those same years.

B.      Number of Hours

BMBP requests reimbursement for 368.8 hours.  The Forest Service opposes this request

and points to a number of inaccuracies in BMBP's accounting.  The court has reviewed all

records carefully.  BMBP concedes that some deductions in Mr. Bloemers accounting is

appropriate.  See Docket #  195, Decl. of Ralph Bloemers.  As such, for October 27, 2004, one

hour of the 2.4 hours will be reduced to a paralegal rate of $120 per hour.  For November 1,

2004, 1.6 hours will be reduced to account for block billing.  For November 3, 2004, 2.4 hours

will be deducted to account for possible inaccuracies in block billing.  For November 5, 2004,

1.5 hours will be deducted to account for possible inaccuracies in block billing.  For November

15, 2004, one hour will be deducted to account for possible inaccuracies in block billing.

Overall, $1,455.00 will be deducted for a final attorney fee award of $79,256.00.

C.      Degree of Success and Other Factors

The Forest Service requests reductions in the amount of attorney fees sought by BMBP

based on the degree of success obtained by BMBP.  See Farrar v. Hobby, 506 U.S. 103, 114-15

(1992) (reasonable fee awards should be calculated by comparing the relief requested and the

relief actually attained).  The Forest Service argues again for segregation of plaintiff FSEEE and

plaintiff BMBP in evaluating the degree of success obtained.  As explained above, I believe that both plaintiffs equally shared in and contributed to the success of this lawsuit.

The Forest Service further argues that BMBP did not prevail on its NEPA claims and therefore its fee award should be reduced to reflect unsuccessful claims.[6]  Fee awards should be reduced for hours spent litigating unsuccessful claims "[o]nce a district court concludes that a plaintiff has pursued unsuccessful claims that are <u>unrelated</u> to the successful claim." <u>Schwarz v. Sec. of Health and Human Svcs.</u>, 73 F.3d 895, 904 (9th Cir. 1995) (emphasis added).  However, the NEPA claims brought by BMBP were related and significantly overlapped with the NFMA claim that was the basis of plaintiffs' successful motion for a preliminary injunction.  This court never addressed plaintiffs' NEPA claims on the merits beyond a passing reference at the preliminary injunction stage of the litigation.  Plaintiffs' argument, at base, was that the Forest Service had erred in offering the High Roberts project for salvage when live trees were in the logging area and marked for cutting.  BMBP's NEPA and NFMA arguments centered on the presence of live trees marked for harvest and this court finds that those claims were related. Because BMBP was successful on the underlying issue that supported their related NFMA and NEPA claims, this court will not discount the fees requested based on the Forest Service's argument.

The Forest Service also argues that fees should not be awarded for work done by BMBP after the January 2005 preliminary injunction was granted.  This court disagrees.  BMBP continued active litigation on issues in this case past January 2005, sent experts to the project

---

[6]BMBP voluntarily dismissed one claim at oral argument and BMBP counsel has written off all time incurred in pursuing that claim.

area to verify court-ordered remarking, participated in the administrative appeal following the court-ordered remand to the Forest Service, and continued to track the accuracy of the Scott Mortality Guidelines in the project area as the date of the High Roberts fire grew more remote in time. Because BMBP's actions after January 2005 revolved around the same legal and factual issues on which it prevailed at the preliminary injunction stage, attorney fees will not be discounted for work BMBP performed over the last two years. See Watson, 300 F.3d at 1096-97 (district court did not abuse its discretion in finding that plaintiff's claims "all involved the same conduct and were sufficiently related to one another to entitle him to fees for all the work performed").

IV.    Costs and Other Expenses

BMBP requests $6,750 in expert fees, $1,030 in legal intern fees, and $1,891 in costs and expenses. EAJA authorizes reimbursement for litigation expenses and costs, such as filing fees, traveling expenses and postage. See 28 U.S.C. § 2412(d)(1)(A). EAJA also authorizes recovery of reasonable expenses of expert witnesses. Id. at § 2412(d)(2)(A). The Forest Service offers no opposition to BMBP's request for recovery of these costs and expenses. Because this court finds the request reasonable, BMBP is awarded $9,671.00 in costs and other expenses.

///

///

///

///

///

///

Page 12 - OPINION AND ORDER

CONCLUSION

For the foregoing reasons, this court grants plaintiff BMBP's motion for attorney fees and costs (#182) in the following amounts:  $79,256.00 in attorney fees and $9,671.00 in costs and other expenses for a total award of $88,927.00.


Dated this 17th day of May, 2007.


_____/s/ Paul Papak_____
Honorable Paul Papak
United States Magistrate Judge

Page 13 - OPINION AND ORDER